IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DELOISE MCMURRAY, *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC LIMITED PARTNERS, LP, and GENUINE DATA SOLUTIONS, LLC<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS-ACTION COMPLAINT**

Plaintiff, Deloise McMurray ("Plaintiff", "Ms. McMurray" or "McMurray"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, submits her Class-Action Complaint against Defendant Strategic Limited Partners, LP ("SLP") and Genuine Data Solutions, LLC ("GDS") (collectively "Defendants"). In support thereof, Plaintiff states as follows:

**NATURE OF THE CASE**

1. Plaintiff, Deloise McMurray, brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.

2. Defendants violated Plaintiff' and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' residential lines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's

1

CLASS-ACTION COMPLAINT

corresponding regulations.

## BACKGROUND ON THE TCPA

3.     In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

4.     A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5.     Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

6.      In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls.  Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

7.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019,

https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

8. The National Do Not Call Registry allows consumers to register their telephone numbers thereby indicating their desire not to receive telephone solicitations at those numbers; and the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

9. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

11. This Court has personal jurisdiction over Defendants, as both are located and conduct business in the state of Texas.

12. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

## PARTIES

13. Plaintiff, Deloise McMurray, is a natural person who resided in Kansas City, State of Missouri at all times relevant hereto.

CLASS-ACTION COMPLAINT

14. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

15. Defendant SLP is a corporation located in Houston, Texas.

16. Defendant GDS is a corporation located in Dallas, Texas.

17. Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

18. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

### *Facts Specific to McMurray*

19. At all times relevant hereto, McMurray owned a cell phone number (816)-xxx-4502 ("Cell Phone").

20. She used that Cell Phone for primarily residential purposes, such as speaking with family and friends.

21. McMurray's number was registered to her as an individual, and not to a business.

22. McMurray's registered her number on the Federal Do-Not-Call Registry in or around November 9, 2022, in order to obtain solitude from unwanted telemarketing calls.

23. At all times relevant, McMurray was the sole user and/or subscriber of the Cell Phone and was financially responsible for phone service to the Cell Phone.

24. In Defendants overzealous attempt to market health care plans through OtisHealth, Defendants willfully or knowingly made (and continues to make) unsolicited telemarketing phone calls to people registered on the National Do Not Call Registry.

25. On multiple occasions, Plaintiff told Defendants to stop calling.

26. Through this conduct, Defendants have invaded the privacy of Ms. McMurray and members of the Class.

27. At no time prior to Defendants first initiating calls to Ms. McMurray did Ms. McMurray provide her Cell Phone number to Defendants, or through any medium.

28. At no time did Ms. McMurray ever enter in a business relationship with Defendants before the call campaign.

29. At no point did Ms. McMurray provide Defendants with her express written consent to be called for telemarketing purposes.

30. Nonetheless, on or around December 27, 2022, Defendant started placing telemarketing phone calls to Plaintiff's Cell Phone soliciting healthcare options.

31. As a result of the unlawful robocalls, Ms. McMurray experienced frustration, annoyance, irritation and a sense that her privacy had been invaded.

### *SLP's Liability for GDS's Telemarketing Calls*

32. At all times relevant to this complaint, there existed an agency relationship between SLP and GDS, with GDS acting as SLP's agent.

33. At all times relevant to this complaint, SLP gave its apparent, if not actual, authority to GDS to initiate the offending telephone calls, on SLP's behalf to the Plaintiff and putative class members.

34. At all times relevant to this complaint, GDS acted within the scope and authority of its agency relationship with SLP by initiating the offending telephone calls on behalf of SLP to the Plaintiff and putative class members.

35. Defendants financially benefitted from their policy and practice of initiating the offending telephone calls complained of herein.

36. For more than a quarter century the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. On May 9, 2013, the FCC issued a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."

38. The FCC's ruling warned sellers, like SLP, that they may not avoid liability by outsourcing their telemarketing whims to third parties:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted). "Sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *Id.*

39. Even absent evidence of a formal contractual relationship between a seller and telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

40. GDS promoted SLP products in telemarketing calls to generate new paying customers, and did so, as they did with the Plaintiff.

41. SLP was knowingly and actively accepting the business that originated through GDS's illegal telemarketing calls for SLP's mortgage services.

42. SLP maintained interim control over GDS's actions.

43. For example, SLP had absolute control over whether, and under what circumstances, it would accept a customer.

44. SLP had day-to-day control over GDS's actions, including the ability to prohibit GDS from calling numbers on the Do Not Call Registry.

45. The May 2013 FCC Ruling allows called parties to obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Evidence of circumstances pointing to a telemarketer's apparent authority "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

## **CLASS ALLEGATIONS**

46. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

47. Plaintiff seeks to represent the following class:

> All persons within the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one telephone call from Defendants or someone acting on its behalf (2) during a 12-month period; (3) where the calls were made in connection with a campaign to solicit

products or services; and (4) whose number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

48. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

49. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

50. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

51. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

52. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

53. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

54. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and

      b. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

55. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

56. Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this class action lawsuit.

57. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

58. Defendants are headquartered in this District. This District is therefore an appropriate forum in which to adjudicate this dispute. Based on discovery and further

investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5)
### *Do-Not-Call Claim*

59. Ms. McMurray re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

60. McMurray brings this Count individually and on behalf of all others similarly situated.

61. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered her or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

62. Defendants called Plaintiff for solicitation purposes despite the fact her number had been on the Do Not Call Registry since November 2022.

63. Defendants called Plaintiff and the putative class members on multiple occasions during a single calendar year despite registration on the Do Not Call list.

64. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

65. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error or good faith mistake.

66. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## **Prayer for Judgment**

WHEREFORE, Plaintiff, DELOISE MCMURRAY, individually, and or on behalf of all other similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Ms. McMurray as the class representative;

b. Enter an order appointing Kazerouni Law Group, APC as class counsel;

c. Enter judgment in favor of Ms. McMurray and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if Defendant willfully violated the TCPA;

d. Enter injunctive relief against both Defendant as permitted under the TCPA;

e. Award Ms. McMurray and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and

f. Award Ms. McMurray and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, DELOISE MCMURRAY, demands a jury trial in this case.

Dated: February 12, 2024　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　KAZEROUNI LAW GROUP, APC

　　　　　　　　　　　　　　　　　　By: */s/ Amy Ginsburg*
　　　　　　　　　　　　　　　　　　Amy Ginsburg, Esq. (TX Bar ID: 224107506)
　　　　　　　　　　　　　　　　　　amy@kazlg.com
　　　　　　　　　　　　　　　　　　245 Fischer Ave., Suite D1
　　　　　　　　　　　　　　　　　　Costa Mesa, CA 92626
　　　　　　　　　　　　　　　　　　Telephone: (214) 880-6362
　　　　　　　　　　　　　　　　　　Fax: (800) 635-6425

　　　　　　　　　　　　　　　　　　1012 N. Bethlehem Pike Suite 103, Box #9
　　　　　　　　　　　　　　　　　　Ambler, PA 19002

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff