**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

DELOISE MCMURRAY, individually, and
on behalf of all others similarly situated,

        Plaintiff,

v.

STRATEGIC LIMITED PARTNERS, LP and
GENUINE DATA SOLUTIONS,

        Defendant(s).

Civil Action No. 24-cv-00512

**ANSWER AND AFFIRMATIVE TO CLASS-ACTION  COMPLAINT**

Now Comes Defendant, Strategic Limited Partners, LP ("SLP"), by and through its attorneys, Peterson, Johnson & Murray, LLC, and for its Answer and Affirmative Defenses to the Class Action Complaint of Plaintiff, Deloise McMurray ("Plaintiff", "Ms. McMurray" or "McMurray"), Defendants state as follows:

**NATURE OF THE CASE**

1.     Plaintiff, Deloise McMurray, brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.

**ANSWER: SLP admits only that Plaintiff has brought her claims and putative class action, but denies that there is any merit to the claims against it.**

2.     Defendants violated Plaintiff  and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' residential lines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's

corresponding regulations.

**ANSWER:  SLP denies the allegations contained in Paragraph 2.**

<u>**BACKGROUND ON THE TCPA**</u>

3.    In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

**ANSWER: SLP admits only that the TCPA was signed into law, but denies any violation of said law by SLP.**

4.    A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

**ANSWER: SLP admits only that Plaintiff has properly quoted the statements from the Congressional Hearing.**

5.    Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Red. 7961, 7964 (F.C.C. July 10, 2015).

**ANSWER: SLP admits only that other parties have and continue to violate the TCPA, but denies that it violated the TCPA with respect to the allegations in Plaintiff's Class Action Complaint.**

**6.**    In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022) *available* at:

https://www.fie.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-cal1-registry.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 6, as the website is no longer available.**

7.      The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790,* THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 7, as the article is not available to Defendant.**

8.      The National Do Not Call Registry allows consumers to register their telephone numbers thereby indicating their desire not to receive telephone solicitations at those numbers; and the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

**ANSWER: SLP admits only that the TCPA has provided protection to individuals on the National Do No Call Registry.**

9.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are

promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER: SLP admits only that the TCPA provides for a private cause of action but denies any violation of said law by SLP.**

<u>JURISDICTION AND VENUE</u>

10.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. <u>See</u> *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

**ANSWER: SLP admits only that this Court has jurisdiction over Plaintiff's TCPA claims, as those claims state a federal question, but denies the remaining allegations in Paragraph 10.**

11.     This Court has personal jurisdiction over Defendants, as both are located and conduct business in the state of Texas.

**ANSWER: SLP admits only that this Court has jurisdiction over Plaintiff's TCPA claims and that SLP conducts business in the State of Texas.**

12.     Venue is proper pursuant to 28 U.S.C. §139l(b)(1) and 28 U.S.C. §1391(b)(2).

**ANSWER: SLP admits that that venue is appropriate, but otherwise denies the allegations in Paragraph 12.**

PARTIES

13.     Plaintiff, Deloise McMurray, is a natural person who resided in Kansas City, State of Missouri at all times relevant hereto.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the**

allegations in Paragraph 13.

14. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

**ANSWER: SLP admits only that Plaintiff is a person for the purposes of 47 U.S.C. § 153(39).**

15. Defendant SLP is a corporation located in Houston, Texas.

**ANSWER: SLP denies the allegations in Paragraph 15.**

16. Defendant GOS is a corporation located in Dallas, Texas.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 16.**

17. Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

**ANSWER: SLP admits only that it is a person as defined by 47 U.S.C. §153(39), but lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 17.**

18. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**ANSWER: SLP denies the allegations contained in Paragraph 18.**

<u>FACTUAL ALLEGATIONS</u>

*Facts Specific to McMurray*

19. At all times relevant hereto, McMurray owned a cell phone number (816)-xxx-4502 ("Cell Phone").

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 19.**

5

20.    She used that Cell Phone for primarily residential purposes, such as speaking with family and friends.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 20.**

21.    McMurray's number was registered to her as an individual, and not to a business.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 21.**

22.    McMurray's registered her number on the Federal Do-Not-Call Registry in or around November 9, 2022, in order to obtain solitude from unwanted telemarketing calls.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 22.**

23.    At all times relevant, McMurray was the sole user and/or subscriber of the Cell Phone and was financially responsible for phone service to the Cell Phone.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 23.**

24.    In Defendants overzealous attempt to market health care plans through OtisHealth, Defendants willfully or knowingly made (and continues to make) unsolicited telemarketing phone calls to people registered on the National Do Not Call Registry.

**ANSWER: SLP denies the allegations in Paragraph 24.**

25.    On multiple occasions, Plaintiff told Defendants to stop calling.

**ANSWER: SLP denies the allegations in Paragraph 25.**

26.    Through this conduct, Defendants have invaded the privacy of Ms. McMurray

and members of the Class.

**ANSWER: SLP denies the allegations in Paragraph 26.**

27.    At no time prior to Defendants first initiating calls to Ms. McMurray did Ms. McMurray provide her Cell Phone number to Defendants, or through any medium.

**ANSWER: SLP denies the allegations in Paragraph 27.**

28.    At no time did Ms. McMurray ever enter in a business relationship with Defendants before the call campaign.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 28.**

29.    At no point did Ms. McMurray provide Defendants with her express written consent to be called for telemarketing purposes.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 29.**

30.    Nonetheless, on or around December 27, 2022, Defendant started placing telemarketing phone calls to Plaintiffs Cell Phone soliciting healthcare options.

**ANSWER: SLP denies the allegations in Paragraph 30.**

31.    As a result of the unlawful robocalls, Ms. McMurray experienced frustration, annoyance, irritation and a sense that her privacy had been invaded.

**ANSWER: SLP denies the allegations in Paragraph 31.**

*SLP's Liability for GDS's Telemarketing Calls*

32.    At all times relevant to this complaint, there existed an agency relationship between SLP and GOS, with GOS acting as SLP's agent.

**ANSWER: SLP denies the allegations in Paragraph 32.**

33.    At all times relevant to this complaint, SLP gave its apparent, if not actual, authority to GOS to initiate the offending telephone calls, on SLP's behalf to the Plaintiff and putative class members.

**ANSWER: SLP denies the allegations in Paragraph 33.**

34.    At all times relevant to this complaint, GDS acted within the scope and authority of its agency relationship with SLP by initiating the offending telephone calls on behalf of SLP to the Plaintiff and putative class members.

**ANSWER: SLP denies the allegations in Paragraph 34.**

35.    Defendants financially benefitted from their policy and practice of initiating the offending telephone calls complained of herein.

**ANSWER: SLP denies the allegations in Paragraph 35.**

36.    For more than a quarter century the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Red 12391, 12397 (ii 13) (1995).

**ANSWER:  SLP admits only that Plaintiff has correctly quoted a portion of the cited decision, but denies that it is reasonable for any calls allegedly made to Plaintiff or the putative class members.**

37.    On May 9, 2013, the FCC issued a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b)

8

or section 227(c) that are committed by third-party telemarketers."

**ANSWER: SLP admits only that Plaintiff has correctly quoted a portion of the cited ruling, but denies that it is reasonable for any calls allegedly made to Plaintiff or the putative class members or that it liable for the same.**

38. The FCC's ruling warned sellers, like SLP, that they may not avoid liability by outsourcing their telemarketing whims to third parties:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

May 2013 FCC Ruling, 28 FCC Red at 6588 (ii 37) (internal citations omitted). "Sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *Id.*

**ANSWER:  SLP admits only that Plaintiff has correctly quoted a portion of the cited ruling, but denies the remaining allegations in Paragraph 38.**

39. Even absent evidence of a formal contractual relationship between a seller and telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

**ANSWER:  SLP admits only that Plaintiff has correctly quoted a portion of the cited ruling, but denies the remaining allegations in Paragraph 39.**

40. GOS promoted SLP products in telemarketing calls to generate new paying

customers, and did so, as they did with the Plaintiff.

**ANSWER: SLP denies the allegations in Paragraph 40.**

41.    SLP was knowingly and actively accepting the business that originated through GDS's illegal telemarketing calls for SLP's mortgage services.

**ANSWER:  SLP denies the allegations in Paragraph 41.**

42.    SLP maintained interim control over GDS's actions.

**ANSWER: SLP denies the allegations in Paragraph 42.**

43.    For example, SLP had absolute control over whether, and under what circumstances, it would accept a customer.

**ANSWER: SLP denies the allegations in Paragraph 43.**

44.    SLP had day-to-day control over GDS's actions, including the ability to prohibit GDS from calling numbers on the Do Not Call Registry.

**ANSWER: SLP denies the allegations in Paragraph 44.**

45.    The May 2013 FCC Ruling allows called parties to obtain "evidence of these kinds of relationships ...   through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to a telemarketer's apparent authority "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**ANSWER: SLP denies the allegations in Paragraph 45.**

## CLASS ALLEGATIONS

46.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff

brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

**ANSWER: SLP admits only that Plaintiff has brought this matter as a putative class action, but denies the remaining allegations in Paragraph 46.**

47.    Plaintiff seeks to represent the following class:

All persons within the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification:
(1) received more than one telephone call from Defendants or someone acting on its behalf (2) during a 12-month period; (3) where the calls were made in connection with a campaign to solicit products or services; and (4) whose number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received.

**ANSWER: SLP admits only that Plaintiff has brought this matter as a putative class action and has defined the class members pursuant to this paragraph, but denies that a class action is appropriate.**

48.    Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

**ANSWER: SLP denies the allegations in Paragraph 48.**

49.    The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

**ANSWER: ANSWER: SLP denies the allegations in Paragraph 49.**

50.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

**ANSWER: SLP denies the allegations in Paragraph 50.**

51.     Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 51.**

52.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

**ANSWER: SLP denies the allegations in Paragraph 52.**

53.     Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

**ANSWER: SLP denies the allegations in Paragraph 53.**

54.     Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

    a. Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and
    b. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

**ANSWER: SLP denies the allegations in Paragraph 54 and its subparts.**

55.     Plaintiff's claims are typical of the claims of the proposed class members because

her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

**ANSWER: SLP denies the allegations in Paragraph 55.**

56.     Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this class action lawsuit.

**ANSWER: SLP lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 56.**

57.     The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**ANSWER: SLP denies the allegations in Paragraph 57.**

58.    Defendants are headquartered in this District. This District is therefore an appropriate forum in which to adjudicate this dispute. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

**ANSWER:   SLP admits only that it has an office in this District, but denies the remaining allegations in Paragraph 58.**

## COUNTI
**Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5)**
*Do-Not-Call Claim*

59.    Ms. McMurray re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

**ANSWER:  SLP restates its answers to Paragraphs 1-58, as set forth herein.**

60.    McMurray brings this Count individually and on behalf of all others similarly situated.

**ANSWER:  SLP admits that Plaintiff has brought this lawsuit on behalf of herself and other putative class members, but denies the remaining allegation in Paragraph 60.**

61.    The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered her or his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

14

**ANSWER: SLP admits the allegations in Paragraph 90 as an accurate summary of 47 U.S.C. § 227(c), but denies that SLP violated or caused any violation of the TCPA.**

62.     Defendants called Plaintiff for solicitation purposes despite the fact her number had been on the Do Not Call Registry since November 2022.

**ANSWER: SLP denies the allegations in Paragraph 62.**

63.     Defendants called Plaintiff and the putative class members on multiple occasions during a single calendar year despite registration on the Do Not Call list.

**ANSWER: SLP denies the allegations in Paragraph 63.**

64.     Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

**ANSWER: SLP denies the allegations in Paragraph 64.**

65.     The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error or good faith mistake.

**ANSWER: SLP denies the allegations in Paragraph 65.**

66.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**ANSWER: SLP denies the allegations in Paragraph 66.**

**WHEREFORE**, Defendant Strategic Limited Partners, LP respectfully requests that this court grant judgment in its favor and against Plaintiff for each count brought against it, deny any motion to certify this matter as a class action, award fees and costs in its favor and for any other

relief that this Court deems necessary and just.

## DEFENDANT DEMANDS A JURY TRIAL

## AFFIRMATIVE DEFENSES

### Affirmative Defense One- Lack of Standing

Plaintiff lacks Article III standing to bring these TCPA claims, as Plaintiff has not suffered an injury.

### Affirmative Defense Two- Set-Off

Defendant is entitled to a set-off for all amounts of money received by third parties for the same calls in question.

### Affirmative Defense Three- Failure to Join a Necessary Party

Plaintiff has failed to join necessary parties and therefore, Plaintiff's claims should be dismissed.

Respectfully submitted:

By:    */s/ Dominick L. Lanzito*

Dominick L. Lanzito
Attorneys for National Individual Insurance Agency, LLC
*Admitted Pro Hac Vice*
Peterson, Johnson & Murray LLC
1301 W. 22nd Street, Suite 500
Chicago, IL 60606
(312) 724-8035
dlanzito@pjmlaw.com

Alexander J. Gonzales
Gonzales Taplin PA
9600 Westminster Glen Avenue
Austin, TX 78730
(512) 799-0528
agonzales@gonzalestaplin.com
Attorney No. 08118563

16